**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-01613-CMA-BNB

ROBERT DARROW, individually and on behalf of other similarly situated persons,

    Plaintiff,

v.

WKRP MANAGEMENT, LLC,
WKRP COLORADO PP, LLC,
WKRP COLORADO, LLC, and
WKRP HOLDINGS, LLC,

    Defendants.

---

**ORDER GRANTING MOTION FOR CONDITONAL
COLLECTIVE ACTION CERTIFICATION**

---

This matter is before the Court on Plaintiffs' Renewed Motion for Conditional Collective Action Certification (Doc. # 127). Plaintiffs are, or were, pizza delivery drivers employed by Defendants, who jointly operate Pizza Hut franchise stores in Colorado, Kansas, Missouri, and New Mexico.[1] Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to sufficiently reimburse their delivery drivers for vehicle-related expenses and, thereby, reducing their wages below the federal

---

[1] Plaintiff Darrow is the only named plaintiff. However, six additional plaintiffs have filed written consent forms with the Court. (Doc. ## 4, 5, 18, 40, 70.) The Court will refer to Plaintiff Darrow and the six other delivery drivers collectively as "Plaintiffs."

minimum.[2] In the instant motion, Plaintiffs seek to have their FLSA claim conditionally certified as a collective action, as permitted by 29 U.S.C. § 216(b).

## I. **BACKGROUND**

The facts related to this matter are more fully set forth in the Court's Order denying Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. # 144.) A brief recap follows.

Plaintiffs assert that, as a condition of their employment, they were required to "maintain and pay for safe, legally-operable, and insured automobiles when delivering [Defendants'] pizza and other food items." (Doc. # 102, ¶ 17.) Plaintiffs allege that that they were paid hourly wages at or near the applicable federal minimum wage, plus a set amount for each delivery – typically less than $0.95 per delivery – as reimbursement for their vehicle expenses. (*Id.*, ¶ 55.) Ultimately, Plaintiffs contend that their compensation minus the vehicle-related costs they were required to incur as a condition of their employment resulted in their hourly wages falling below the federal minimum in violation of the FLSA. (*Id.*)

This case was originally commenced on July 8, 2009. (Doc. # 1.) After the original complaint was dismissed without prejudice on April 6, 2010 (Doc. # 69), Plaintiffs filed an amended complaint three weeks later. (Doc. # 78.) After a second

---

[2] Plaintiffs also allege that Defendants violated the Colorado Minimum Wage of Workers Act ("CMWWA") by failing to pay the Colorado state minimum wage. Plaintiffs bring their CMWWA claim as a class action under Fed. R. Civ. P. 23. That claim is not at issue here because Plaintiffs have not yet sought certification of the class action, and nothing in this Order should be construed as certifying a class action for Plaintiffs' CMWWA claims.

motion to dismiss had been fully briefed, Plaintiffs filed a motion for leave to amend the amended complaint. That motion was granted and Plaintiffs filed their Second Amended Complaint (the "SAC") on August 8, 2010. (Doc. # 102.) Defendants subsequently filed a third motion to dismiss, arguing that Plaintiff Darrow had failed to allege his actual automotive expenses and, as a result, failed to state a plausible claim that (1) Defendants' reimbursement formula did not reasonably approximate Plaintiff Darrow's' actual vehicle-related expenses, and (2) that Defendants had paid Plaintiff Darrow below the minimum wage. (Doc. ## 106, 107.) Additionally, Defendants argued that the collective action claim should be dismissed because Plaintiff Darrow failed to plead that others pizza delivery drivers were similarly situated to him. (*Id.*)

The Court denied Defendants' third motion to dismiss on June 3, 2011, finding that Plaintiff Darrow's reasonable estimate of his vehicle expenses, based largely on the IRS standard business mileage rates, was factually sufficient to serve as the basis for his FLSA claim.[3] (Doc. # 144.) Using this estimate of his vehicle-related expenses, the Court found that Plaintiff Darrow had plead sufficient facts to raise the plausible inference that Defendants had failed to reasonably approximate his vehicle-related expenses and, as a result, Plaintiff Darrow's wages were reduced below the federal minimum. (*Id.* at 12.) With respect to the collective action claim, the Court found that "the complaint alleges sufficient facts to demonstrate that opt-in Plaintiffs were subjected to the same policy regarding reimbursement as Plaintiff [Darrow] because

---

[3] The Court's Order is also available at *Darrow v. WKRP Mgmt., LLC*, No. 09-cv-01613, 2011 WL 2174496 (D. Colo. June 3, 2011) (unpublished).

each of them received a flat rate reimbursement of between $0.75 and $1.00 per delivery." (*Id.* at 13.)

In the instant motion, Plaintiffs seek conditional certification of the present action as a collective action under § 216(b) of the FLSA, with the class consisting of all persons employed by Defendants as delivery drivers during the last three years. Plaintiffs also seek an order requiring Defendants to provide to Plaintiffs' counsel, within fourteen days, the names, last known addresses, and dates of employment for each potential plaintiff, as well as the store location and number where each potential plaintiff worked. Additionally, Plaintiffs seek permission to send notice and consent forms (Doc. ## 127-15; 127-16) to potential plaintiffs, and request an order requiring Defendants to post the notice in the break rooms or employee areas of their stores until the opt-in period closes.

## II.  LEGAL STANDARD

Section 216(b) of the FLSA provides that an action under the FLSA for minimum wage violations "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." The Tenth Circuit has approved the use of a two-step process for determining whether the putative class members are similarly situated to the named plaintiff. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-1105 (10th Cir. 2001). At the first step, prior to discovery, the district court makes a "notice stage" determination of whether the plaintiffs are similarly situated. For conditional certification at the notice

stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). The standard for conditional certification at the notice stage, then, "is a lenient one."[4] *Wass v. NPC Int'l, Inc.*, No. 09-2254, 2011 WL 1118774, at *3 (D. Kan. Mar. 28, 2011) (unpublished); *see also Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007) ("This initial step creates a lenient standard which typically results in conditional certification of a representative class.").

### III. ANALYSIS

**A.  PLAINTIFFS' REQUEST FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

Plaintiffs assert that they provided substantial allegations in the SAC establishing that Defendants paid its delivery drivers "at or near minimum wage and applies the same automobile expense reimbursement policy to all drivers, regardless of store, vehicle type, or miles driven." (Doc. # 127 at 10-11.) Additionally, Plaintiffs have submitted evidence in the form of six declarations that Defendants compensated all

---

[4] The second step for class certification under § 216(b) demands a higher level of scrutiny. At the second step, which occurs after discovery is complete and often prompted by a motion to decertify, a district court examines, *inter alia*, "any disparate factual and employment circumstances shown in the record, whether defenses asserted by the defendant are individual to certain plaintiffs, and fairness and procedural considerations." *Bass v. PJComn Acquisition Corp.*, No. 09-cv-01614, 2010 WL 3720217, at *2 (D. Colo. Sept. 15, 2010) (unpublished). The instant motion requires the Court to determine only whether Plaintiffs have satisfied the first step of the *Thiessen* two-step approach.

their delivery drivers using the same reimbursement policies.[5] (Doc. # 127-9 through 127-14, hereinafter "the Declarations.") After reviewing the allegations in the SAC, which are partially supported by the Declarations, the Court finds that Plaintiffs have satisfied the initial step of *Thiessen's* two-step analysis.

First, Plaintiffs have alleged that they are similarly situated with respect to the requirements of their particular job. According to both the SAC and the Declarations, Defendants require all of their delivery drivers to "maintain and pay for a safe, legally operable, and insured automobile when delivering [Defendants'] pizzas and other food items." (Doc. # 102, ¶ 17; Declarations, ¶ 3.) Second, Plaintiffs have alleged that Defendants paid all of its delivery drivers at or very near to the minimum wage. (Doc. # 102, ¶ 39.) Third, Plaintiffs have alleged and submitted evidence that they were all subjected to the same reimbursement policy, under which Defendants reimbursed its delivery drivers a set amount per delivery, regardless of the length of the delivery. (Doc. # 102, ¶ 41; Declarations, ¶ 6.) Fourth, Plaintiffs have alleged that Defendants' reimbursement policy was an unreasonable approximation of their automobile expenses, resulting in their wages falling below the federal minimum wage. (Doc. # 102, ¶ 46.) These allegations, taken in combination and partially supported by the Declarations, constitute "substantial allegations" that the potential class members were

---

[5] Defendants assert that the amount of reimbursement varied by state or by the policy of an individual restaurant. (Doc. # 153 at 15.) Even if true, this does not affect the courts analysis. *See Wass*, 2011 WL 1118774, at *6. The slight differences in reimbursement rates at the various restaurants do not contradict the fact that Defendants applied a common policy for its delivery drivers, *i.e.*, a set reimbursement amount per delivery.

victims of a single decision, policy, or plan – reimbursement on a per delivery basis – that resulted in a violation of the FLSA.

At least three district courts have considered motions for conditional collective action certification where the plaintiffs claimed, as here, that defendant pizza companies had inadequately reimbursed their delivery drivers for vehicle-related expenses by using a set per delivery reimbursement rate.  All three courts found that the plaintiffs had met their burden for purposes of conditional certification under the notice stage standard. *See Bass*, 2010 WL 3720217, at *2; *Wass*, 2011 WL 1118774, at *4; *Luiken v. Domino's Pizza, LLC*, No. 09-516, 2010 WL 2545875, at *3 (D. Minn. June 21, 2010). The Court finds these decisions to be well-reasoned and persuasive, and they offer further support for the Court's conclusion that Plaintiffs have satisfied the Tenth Circuit's lenient, notice stage standard for conditional certification.[6]

Defendants raise a number of arguments in opposing conditional certification. First, Defendants contend that the Declarations contain inadmissible evidence that

---

[6] Defendants contend that these decisions are undermined by the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).  Defendants' reliance on *Dukes* is misplaced.  In *Dukes*, the Supreme Court declined to certify a class under Fed. R. Civ. P. 23 on the basis that Rule 23(a)(2)'s commonality requirement was not satisfied.  *Id*. at 2556-57.  In the instant motion, Plaintiffs are requesting that the Court certify their FLSA claim as a collective action under § 216(b), not as a class action under Rule 23.  There are significant differences between collective actions under § 216(b) and class actions under Rule 23 that makes *Dukes* inapplicable here.  For example, unlike Rule 23 class actions, "the FLSA requires collective actions members to affirmatively opt in to the case."  *Spellman v. Am. Eagle Express, Inc.,* No. 10-1764, 2011 WL 4014351, at *1 n.1 (E.D. Pa. July 21, 2011) (finding that *Dukes* did not affect the Court's analysis of whether collective action plaintiffs had shown they were "similarly situated"); *Creely v. HCR Manorcare, Inc.*, No. 09 CV 2879, 2011 WL 3794142, at *1 (N.D. Ohio July 1, 2011) (same).

should be disregarded by the Court. (Doc. # 153 at 9.) Defendants accurately note that the declarants do not set forth their respective rates of pay, the amount they were reimbursed for their delivery expenses, or any reasonable estimate of the expenses they incurred for maintaining their automobiles. The Court agrees that the Declarations have little evidentiary value insofar as they are offered to prove that Defendants violated the FLSA by failing to pay minimum wages. However, at the notice stage, courts do not reach the merits of plaintiffs' claims. *See Renfro*, 243 F.R.D. at 435. Thus, Plaintiffs' lack of evidence that an FLSA violation occurred might be relevant in the context of a motion for summary judgment, but the Court does not find it particularly relevant in the context of the instant motion.[7] *See id.* Here, each declarant avers that they were subject to the same reimbursement policy, under which they were paid "a set reimbursement amount per delivery, regardless of length."[8] (Declarations, ¶ 6.) Thus, the Declarations support Plaintiffs' contention that the potential class members were "together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

Defendants also argue that Plaintiffs cannot show they are similarly situated because there are variances in their individual circumstances. Among other things, Defendants assert that Plaintiffs were paid different hourly wage rates, were reimbursed

---

[7] Similarly, the declarations attached to Defendants' response by other delivery drivers that they were **not** under-reimbursed might be relevant on motion for summary judgment but are not relevant with respect to the instant motion. *See Wass*, 2011 WL 1118774, at *5 ("the sworn statements by other drivers that they were **not** under-reimbursed . . . are irrelevant at [the notice stage].") (emphasis in original).

[8] The Court notes that Defendants do not dispute that they reimbursed their delivery drivers using a set amount per delivery. (Doc. # 153 at 13.)

for their expenses at different rates, and incurred different vehicle-related expenses based on a host of personal factors.[9] (Doc. # 153 at 19.) However, the existence, effect, and predominance of these individual questions and defenses would be relevant only at the second stage of collective action certification, and are not appropriate considerations at the notice stage inquiry. See *Wass*, 2011 WL 1118774, at *6; *Luiken*, 2010 WL 2545875, at *2-3; *Renfro*, 243 F.R.D. at 434-35 (rejecting similar arguments as "premature"). Moreover, even though there may be some differences in the calculation of damages should Plaintiffs ultimately prevail, "those differences are not sufficient to preclude joining the claims in one action." *Sanchez v. La Cocina Mexicana, Inc.*, No. 09 Civ. 9072, 2010 WL 2653303, at *1 (S.D.N.Y. July 1, 2010).

Next, Defendants contend that Plaintiffs cannot show they were together victims of an FLSA violation because they have presented nothing but conclusory allegations that an FLSA violation occurred. Defendants assert that "[i]f Plaintiffs do not know their actual expenses, it is axiomatic that they cannot establish that those expenses resulted in their wages falling below the minimum wage." (Doc. # 153 at 12.) This argument has no merit for two reasons. First, at this stage, the Court must determine only whether the delivery drivers are similarly situated, not whether Plaintiffs' FLSA claim has merit. See *Renfro*, 243 F.R.D. at 435 ("On the motion for conditional certification . . . the [c]ourt will

---

[9] Throughout Defendants' response, they refer to the fact that delivery drivers receive tips. However, Plaintiffs have alleged that Defendants did not include tips in determining its compliance with the federal wage law. Defendants have not challenged that allegation (Doc. # 147, ¶ 71); therefore, "the fact that drivers may receive tips is not relevant to the present analysis." *Wass*, 2011 WL 1118774, at *7 n.3.

not reach the merits of [the] plaintiffs' claim."). The second reason to reject this argument is that the Court has already considered and rejected the exact same argument in its Order denying Defendants' Motion to Dismiss the SAC.[10] (Doc. # 144.) As the Court has already determined, Plaintiffs may rely on reasonable estimates of their vehicle-related expenses as the factual basis of their FLSA claim. (Doc. # 144 at 12.)

Finally, the parties disagree as to the applicable statute of limitations period. Under 29 U.S.C. § 255(a), an FLSA action must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Defendants contend that Plaintiffs have not adequately plead a willful violation of the FLSA. Having reviewed the SAC, the Court finds that Plaintiffs' allegations are sufficient to raise the plausible inference that Defendants willfully violated the FLSA. *See Bass*, 2010 WL 3720217, at *3 (finding that plaintiffs had alleged willful violation of the FLSA based on similar complaint); *Smith v. Pizza Hut, Inc.*, No. 09-cv-1632, 2011 WL 2791331, at *6 (D. Colo. July 14, 2011) (same). Thus, for purposes of this collective action certification, the relevant statutes of limitations period is three years.

---

[10] Defendants' attempt to re-litigate issues that have already been decided wastes the Court's limited resources, causes unnecessary delay, needlessly increases the cost of litigation for Plaintiffs, and may lead to sanctions if Defendants persist in making arguments that have already been rejected by the Court. *See* Fed. R. Civ. P. 11(b).

10

**B.      NOTICE TO CLASS MEMBERS**

In light of the Court's conclusion that conditional certification of this FLSA collective action is appropriate, Plaintiffs may disseminate notice and consent forms to potential class members.  Here, Plaintiffs have submitted proposed notice and consent forms for the Court's review.  (Doc. ## 127-15; 127-16.)  Defendants have raised a number of specific objections to Plaintiffs' proposed notice (the "Notice").  Defendants also seek a 60-day opt-in period, rather than the 90-day period requested by Plaintiffs. Finally, Defendants oppose Plaintiffs' request for an order requiring Defendants to post the Notice in their stores.

      1.      <u>Defendants' Specific Objections</u>

District courts have discretion to supervise the preparation and distribution of collective action notices.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  The Court must "ensure that the notice is fair and accurate, but it should not alter [the] plaintiff's proposed notice unless such alteration is necessary."  Wass, 2011 WL 1118774, at *8 (citation omitted).  Defendants' objections (Doc. # 153 at 22-25) and the Court's rulings are as follows:

      1. Defendants object to the heading on the Notice that reads: "United States District Court for the District of Colorado," as well as the language on pg. 2, ¶ 1 of the Notice that reads: "The Honorable Judge Christine M. Arguello and the Honorable Magistrate Judge Boyd N. Boland of the United States District Court for the District of Colorado are overseeing this collective action."   Defendants contend that the heading

and the language on pg. 2, ¶ 1 give the appearance that the Court endorses this lawsuit.  The Court **overrules** this objection.  There is nothing inaccurate or unfair about the heading or the language, and alteration is not "necessary."  Furthermore, both the heading and the disputed language are based on a model notice form issued by the Federal Judicial Center.[11]

2.  Defendants object to the introductory language on pg. 1 of the Notice, contending that it inaccurately suggests that this lawsuit is about reimbursed expenses, rather than whether Plaintiffs were paid less than the federal minimum wage.  The Court **overrules** this objection.  The introductory language accurately informs potential class members of Plaintiffs' claims, *i.e.*, that they allege Defendants failed to reimburse them for automobile expenses, which reduced their wages below the minimum.  However, the introductory paragraph should specify that Defendants allegedly paid Plaintiffs below the **federal** minimum wage, as opposed to just the minimum wage.  Further, the Court observes that there appears to be a typographical error in the first paragraph.  The word "deliver" should be changed to "delivery."   Plaintiffs are **ORDERED** to make these two changes before sending out the Notice.

3.  Defendants object to the language in the "Ask to be Included" and "Do Nothing" boxes on the pg.1 of the Notice.  The Court **sustains** this objection.  The language in the "Ask to be Included" box states that potential plaintiffs "keep the

---

[11] *See* Federal Judicial Center, Model Notice Form, http://www.fjc.gov/public/home (last visited February 16, 2012); *Hadley v. Wintrust Mortg. Corp.*, No. 10-2574, 2011 WL 4600623, at *3 (D. Kan. Oct. 3, 2011).

possibility of getting money and benefits from a trial or settlement of wage and hour claims." This suggests that potential plaintiffs lose the possibility of getting money and benefits for their claims, even though there is nothing precluding potential plaintiffs from bringing a separate action. Defendants' concern may be addressed by changing the word "keep" to "have." Thus, Plaintiffs are **ORDERED** to change "keep" to "have." Additionally, Plaintiffs are **ORDERED** to clarify that the wage and hour claims referred to are federal wage and hour claims. Furthermore, the language in the "Do Nothing" box is unnecessarily confusing and could also be construed as suggesting that an individual gives up the right to recover under the FLSA if he or she does not opt in to this action. Defendants' proposed language accurately sets forth the law and Plaintiffs are **ORDERED** to insert that language in the "Do Nothing" box.

    4. Defendants object to the language on pg. 2, ¶ 3 of the Notice, contending that it suggests all those who return the consent form are automatically included as plaintiffs in this action. The Court **overrules** this objection because there is nothing inaccurate about the proposed language. Upon submission of a written consent form, an individual joins the action as a plaintiff. See 29 U.S.C. § 256. Whether the class is later decertified or the individual is later determined not to have a meritorious claim does not affect his or her status as a plaintiff upon filing a written consent with the Court.

    5. Defendants object to the language on pg. 2, ¶ 5 of the Notice. Plaintiffs agree to include Defendants' proposed language. (Doc. # 158 at 9 n.4.) Thus, this objection

is **sustained** and Plaintiffs are **ORDERED** to insert Defendants' proposed language on pg. 2, ¶ 5 of the Notice.

6. Defendants object to the content contained on pg. 3, ¶ 10 of the Notice, arguing that it does not properly set forth the obligations of a potential plaintiff that opts in to this action. The Court **sustains this objection in part and overrules it in part**. Defendants assert that the proposed notice fails to inform potential plaintiffs that they may have to pay costs if they do not prevail. However, Plaintiffs' counsel has agreed to cover such costs, irrespective of the results of this litigation. (Doc. # 158-3.) The Notice need not warn potential plaintiffs about an obligation that is not applicable here. However, the Court agrees with Defendants that the Notice fails to inform potential plaintiffs of other obligations they may encounter if they opt in to this action. Thus, it is reasonable and necessary to inform potential plaintiffs that "they may be deposed, required to submit written discovery, compelled to testify, and obligated to appear in [Denver]." *Wass*, 2011 WL 1118774, at *10; *Hadley*, 2011 WL 4600623, at *3. Thus, Plaintiffs are **ORDERED** to include the following language on pg. 3, ¶ 10 of the Notice: "While this suit is pending, you may be required to submit documents and written answers to questions and to testify under oath at a deposition, hearing, or trial, which may take place in Denver, Colorado."

7. Defendants object to the Notice on the basis that it fails to inform potential class members of the federal minimum wage during the applicable time periods. Defendants contend that potential plaintiffs need this information to determine whether

14

they belong in the class.  The Court **overrules** this objection.  The class definition includes all delivery drivers, and that definition is supported by Defendants' common policies concerning delivery drivers' pay rates.  *See Wass*, 2011 WL 1118774, at *9.

        8.  Defendants object to the Notice because it "improperly contains the contact information and website of Plaintiffs' attorneys." (Doc. # 153 at 23.)  The Court **overrules** this objection.  Defendants cite no authority to support their argument.  Potential plaintiffs should have the opportunity to ask questions and discuss concerns with Plaintiffs' counsel before determining whether to join this action.  *See Sanchez*, 2010 WL 2653303, at *2.

        9.  Defendants object to what it characterizes as "repetitive language in bold" urging potential plaintiffs to act promptly.   The Court **overrules** this objection.  Defendants cite no authority to support their argument.  The statute of limitations for potential plaintiffs' claims continues to run until individual plaintiffs file written consent forms with the Court.  Moreover, the opt-in period is of limited duration.  Thus, it is appropriate to emphasize to potential plaintiffs that they must act quickly.

        10.  Except as specifically addressed above, the Court approves the Notice.  Before sending out the Notice and consent forms, Plaintiffs shall provide a new notice form, revised in accordance with this Order, to Defendants for review.  Defendants shall have two business days from the receipt of a revised notice form to assert any objection that the form does not comply with this Order.  Defendants may not assert any new objection that it failed to raise in its opposition to the instant motion.  If Defendants raise

any proper objection, the parties shall confer, and involve the Court only if they are unable to resolve the issue themselves.

    2.    <u>Opt-In Period</u>

Plaintiffs request an opt-in period of 90 days. Defendants contend that the opt-in period should be limited to 60 days. The Court agrees with Plaintiffs that ninety days is reasonable given the potential difficulties inherent in contacting delivery drivers across several states, many of whom may no longer be employed by Defendants.[12] *See Wass*, 2011 WL 1118774, at *11 (denying the defendant's request for an "unusually-short" 60-day opt-in period). Furthermore, Defendants have not provided any reasons why they would be prejudiced by having a 90-day opt-in period.

    3.    <u>Posting the Notice in Stores</u>

Plaintiffs also request that the Court order Defendants to "conspicuously post the notice in the break rooms or employee areas of the stores where delivery drivers work until the opt-in period closes." (Doc. # 127 at 13.) Defendants contend that this request is "unreasonable and superfluous in light of Plaintiffs' contemporaneous request to mail notice to putative plaintiffs." (Doc. # 163 at 25.) In their reply, Plaintiffs fail to respond to Defendants' contention. The Court is not persuaded that any benefits from posting

---

[12] Defendants' citations to two cases in which courts imposed a 60 day opt-in period are not persuasive. In *Shiner v. Select Comfort Corp.*, No. 09 C 2630, 2009 WL 4884166, at *5 (N.D. Ill. Dec. 9, 2009), the court simply stated that the opt-in period was sixty days without any explanation. In *Witteman v. Wisconsin Bell, Inc.*, No. 09-cv-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010), the court imposed a sixty day opt-in period because the end of the notice period would run past the deadline for filing a motion for decertification. In this case, there is currently no deadline for filing any such decertification motion.

the Notice Form outweigh the burden on Defendants from having to post the notice in all of their stores. See *Wass*, 2011 WL 1118774, at *12. As *Wass* noted, such posting would not include the consent forms and so the potential plaintiffs would still need to becontacted by mail. Furthermore, the potential plaintiffs reached by such posting – current drivers – are the same employees for whom Defendants most likely have current address information. See *id.* Thus, the Court **denies** this request.

### IV.  CONCLUSION

Accordingly, it is ORDERED that Plaintiffs' "Renewed Motion for Conditional Collective Action Certification" (Doc. # 127) is GRANTED, and a plaintiff opt-in class is conditionally certified as set forth herein.

It is FURTHER ORDERED that Plaintiffs are authorized to send out notice and consent forms, in accordance with this Order, to each member of the class. To facilitate the dissemination of such forms, Defendants are ORDERED to provide to Plaintiffs' counsel, within fourteen days of this Order, the names, last known addresses, and dates of employment for each potential plaintiff, as well as the store location and number where each potential plaintiff worked.

DATED:  February   28  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge